# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| POM OF PENNSYLVANIA, LLC, | No. _____ |
| *Plaintiff,* | JURY TRIAL DEMANDED |
| v. | |
| PYRAMID TECHNOLOGIES, INC., | |
| *Defendants.* | |

## COMPLAINT

Plaintiff POM of Pennsylvania LLC (POM), by and through its attorneys, brings this complaint against Defendant Pyramid Technologies, Inc. (Pyramid), and in support hereof aver as follows:

### PARTIES

1.     POM is a limited liability company organized under the laws of the state of Wyoming with its principal place of business at 3870 Peachtree Industrial Blvd, Suite 340-194, Duluth, GA 30096.

2.     Pyramid is a corporation with its principal place of business located at 1907 S. Hobson, Suite #122, Mesa, AZ 85204.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over POM's claim under the Computer Fraud and Abuse Act (the CFAA), 18 U.S.C. § 1030, pursuant to 28 U.S.C. § 1331 because that claim arises under federal law.

4.      This Court has supplemental jurisdiction over POM's state law claims pursuant to 28 U.S.C. § 1367 because the claims arise out of the same operative facts as POM's CFAA claim and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims set forth herein took place in this District and under 28 U.S.C. § 1391(b)(3) because Pyramid is subject to this Court's personal jurisdiction with respect to this action.

6.      The Court has personal jurisdiction over Pyramid in that it subjected itself to jurisdiction in this matter as a result of the conduct alleged herein.

## FACTUAL ALLEGATIONS

7.      In Pennsylvania, POM distributes legal, electronic games of skill marketed with the trade name "Pennsylvania Skill" (the POM Game).

8.      The POM Game is a cash-operated video machine that offers the skillful player the ability to win, on every play, at least 105% of the player's consideration.

9.      The POM Game accepts cash through a bill acceptor. It is unable to dispense cash through this mechanism.

10.     Instead, every POM Game is manufactured with an internal printer.

11.     When a player desires to stop play and be paid out for any winnings, the player presses a cash out button.

12.     Then, the internal printer prints a voucher that the player may redeem for cash.

13.     Pyramid manufactures the printer used by tens of thousands of POM Games, including those in Pennsylvania.

14.      After a POM Game player cashes out and receives a voucher, he can redeem it in primarily two ways.

15.     The first way is presentation of the voucher to attendant at the game's location, for instance a bartender. In that case, the bartender will hand the player the cash amount printed on the voucher.

16.     The second way involves a machine called a ticket redemption terminal (TRT). Much like an ATM, a TRT will dispense the cash amount printed on the voucher.

17.     Many POM Game locations in Pennsylvania also have TRTs.

18.     The POM Game is approved for use only with certain TRTs (which POM does not manufacture).

19.     POM-configured TRTs are designed to only have compatibility with the POM Game.

20.     Pyramid has designed its own TRT software, called Sentry.

21.     Pyramid designed Sentry so that it can read vouchers from both POM and other manufacturers of skill games (some of which may be illegal).

22.     Sentry therefore has been installed on non-POM approved TRTs and is in use in the Pennsylvania marketplace by locations that want to maintain both POM and other games (in violation of POM's contracts with operators and locations).

23.     Pyramid designed Sentry to be compatible with its printers in the POM Game.

24.     This compatibility is the genesis of the instant action.

25.     Sentry requires control by a tablet device that allows Sentry, via the tablet, to configure the Pyramid printer to parse and read cash out data, such as the ticket value.

26.     When a Sentry-enabled TRT is paired with a POM Game (that has a Pyramid printer), the internal printer begins to function in ways not intended by POM.

27.     Normally, the Pyramid printer in a POM Game (paired with a POM-approved TRT) will print a POM-specific QR code to the voucher.

28.     When a Sentry-enabled TRT is used with a POM Game, the Pyramid printer intercepts the data that normally is included in the POM-specific QR code and adds that data to an unauthorized second, Sentry-generated QR code. The Sentry-generated QR code is not a part of the POM Game's normal voucher operation.

29.     The Sentry-added QR code contains cash-out data that Sentry, once paired with the internal Pyramid printer, unlawfully accesses within the POM Game itself.

30.     This data includes the precise amount cashed out by every player using the POM Game.

31.     POM does not authorize Pyramid to collect, and send to the Sentry TRT, the data in the Sentry QR code, either individually (as in, per voucher) or in the aggregate, which reveals the macro performance of the POM Game.

32.     Once the QR code is scanned by the Sentry TRT, the cash out data may be collected and analyzed, allowing Pyramid and/or other third parties access to private financial information without POM's approval.

33.     This includes all amounts cashed out at various locations using the unauthorized Sentry system.

34.     This data does allow Pyramid and/or other third parties to analyze and infer other sensitive financial information proprietary to POM.

35.     The data is being used by Pyramid in ways unknown to POM and without POM's consent.

36.     Sentry is also emailing encrypted but unknown data, stolen from the POM Game, to a third party called the Tuna Group.

37.     The relationship between Pyramid and Tuna Group is likewise unknown.

38.     POM gave Pyramid no permission to access, transmit or use any data from the POM Game.

39.     Pyramid, using Sentry's ability to communicate with and alter the Pyramid-branded printers in the POM Game, has: 1) changed the behavior of the printers in the POM Game; and 2) siphoned data from the POM Game, upon information and belief, for Pyramid's unauthorized commercial use.

40.     None of these activities are authorized or approved by POM.

## COUNT I: VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

41.     POM incorporates by reference the averments contained in paragraphs 1 through 40 of this Complaint as though set forth fully.

42.     POM seeks relief pursuant to the CFAA.

43.    The POM Game constitutes a "computer" within the meaning of 18 U.S.C. § 1030(e)(1) in that it constitutes an electronic, magnetic, optical, electrochemical, and/or other high speed data processing device that performs logical, arithmetical, and/or storage functions.

44.    The POM Game constitutes a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2)(B) in that the POM Game is used in and affects interstate commerce, including because the POM Game is composed of components from States other than the State in which it is manufactured, as well as components or subcomponents imported into the United States from overseas; it was manufactured in a State other than the State in which it was used by end-users; the POM Game and/or its components were transported to Pennsylvania via channels of interstate transportation and commerce; the direct and indirect economic profits derived from the POM Games use are recognized in States other than Pennsylvania, including in Georgia, where POM and Pace-O-Matic are headquartered.

45.    Pyramid violated 18 U.S.C. § 1030(a)(2) in that it intentionally accessed the POM Game, through Sentry, without

authorization from POM or Pace-O-Matic or in excess of any authorization, and thereby obtained information from the POM Game, including but not limited to cash-out data.

46.    Pyramid violated 18 U.S.C. § 1030(a)(4) in that it knowingly and with intent to defraud accessed the POM Game, through Sentry, without authorization from POM or Pace-O-Matic or in excess of any authorization, and in furtherance of the intended fraud obtained highly valuable intellectual property and information, including but not limited to the cash-out data.

47.    POM has suffered damage and loss by reason of these violations, including without limitation, harm to POM's data, loss of sales of POM-approved TRT, and costs of investigation and remediation, in an amount to be proved at trial, but in any event, well over $5,000 aggregated over a one-year period.

48.    Pyramid is liable to POM for damages under 18 U.S.C. § 1030(g).

49.    Pyramid's unlawful access to and theft from POM's protected computer also has caused POM irreparable injury.

50.     Upon information and belief, unless restrained and enjoined, Pyramid will continue to commit the violations of 18 U.S.C. § 1030 described above.

51.     POM's remedy at law is not adequate to compensate it for the inflicted and threatened injuries, entitling POM to remedies including injunctive relief as provided in 28 U.S.C. § 1030(g).

52.     Pyramid's acts in accessing the POM Games were willful, malicious, oppressive, and in conscious disregard of POM's rights, and POM is therefore entitled to an award of punitive damages to punish Pyramid's wrongful conduct and deter future wrongful conduct.

WHEREFORE, POM requests that this Court enter judgment in favor of POM and against Pyramid on this Count I, and (i) enjoin Pyramid permanently from copying, downloading, using, selling and/or disseminating any confidential business information of POM, including without limitation cash-out data, and require Pyramid to destroy any copies of such confidential information, including the cash-out data, in its possession; (ii) award POM damages to be proven at trial, including punitive damages on the basis of Pyramid's willful and malicious conduct; and (iii) such other relief as the Court deems just and proper.

## COUNT II: MISAPPROPRIATION AND MISUSE
## OF CONFIDENTIAL BUSINESS INFORMATION

53.    POM incorporates by reference the averments contained in paragraphs 1 through 52 of this Complaint as though set forth fully.

54.    At all relevant times, certain business information of POM was kept in strictest confidence by POM. This confidential business information includes, but is not limited to, the cash-out data.

55.    Pyramid procured POM's confidential information, including the cash-out data, by improper means; namely, by utilizing Sentry to access data in the POM Game without authorization.

56.    Upon information and belief, Pyramid will use and disclose POM's confidential business information, including the cash-out data, to advance its own business interests.

57.    As a direct and proximate result of Pyramid's use and dissemination of POM's confidential business information, including the cash-out data, POM will suffer economic harm, as well as damage to its business in Pennsylvania that is immediate and irreparable.

58.    Pyramid's misappropriation and misuse of POM's confidential business information, including the cash-out data, was willful, wanton, reckless, malicious, outrageous and in conscious

disregard of POM's rights, and POM is therefore entitled to an award of punitive damages to punish Pyramid's wrongful conduct and deter future wrongful conduct.

WHEREFORE, POM requests that this Court enter judgment in favor of POM and against Pyramid on this Count II, and: (i) enjoin Pyramid permanently from copying, downloading, using, selling and/or disseminating any confidential business information of POM, including without limitation the cash-out data, and require Pyramid to destroy or return any copies of such confidential information, including the cash-out data, in its possession; (ii) award POM actual and compensatory damages; (iii) award POM punitive damages on the basis of Pyramid's willful and malicious conduct; and (iv) such other relief as the Court deems just and proper.

## COUNT III: VIOLATION OF THE PENNSYLVANIA CONSUMER PROTECTION AGAINST COMPUTER SPYWARE ACT

59.    POM incorporates by reference the averments contained in paragraphs 1 through 58 of this Complaint as though set forth fully.

60.    POM seeks relief pursuant to the Spyware Act. *See* 73 P.S. §§ 2330.1, *et seq.*

61.     As relevant here, Section 2330.3 of the Spyware Act,

prohibits a "person" other than the "authorized user," from, willfully,

knowingly, or with conscious avoidance of actual knowledge, "caus[ing]

computer software to be copied and us[ing] the software to," *inter alia*:

a.     "[t]hrough deceptive means, remove, disable or render

inoperative security, antispyware or antivirus software installed

on the computer[;]" *id.* at § 2330.3(5); or

b.     perform "any other acts deemed to be deceptive." *Id.* at

2330.3.

62.     The POM Game is composed of data and information

technology that constitute "computer software" under the Spyware Act.

*Id.* at § 2330.2 (defining "computer software" as "[a] sequence of

instructions written in any programming language that is executed on a

computer").

63.     Pyramid is a "person" under the Spyware Act. *See* 73 P.S.

§ 2330.2 (defining "person" as "[a]ny individual, partnership,

corporation, limited liability company or other organization, or any

combination thereof").

64.     Pyramid was not an "authorized user" of the POM Game with respect to accessing the POM Game through the use of Sentry. *See id.* (providing that "[w]ith respect to a computer," an "authorized user" is "a person who owns or is authorized by the owner or lessee to use the computer").

65.     By its conduct described above, Pyramid otherwise acted in a manner that is deceptive. *See id.* at § 2330.2 (providing that "'[d]eceptive' or 'deception' [*i*]*ncludes, but is not limited to*: (1) [a]n intentionally and materially false or fraudulent statement[;] (2) [a] statement or description that intentionally omits or misrepresents material information in order to deceive the authorized user[;] (3) [a]n intentional and material failure to provide any notice to an authorized user regarding the download or installation of software in order to deceive the authorized user" (emphasis added)).

66.     As outlined above, in accessing the POM Game without authorization, Pyramid acted willfully, knowingly, and/or with conscious avoidance of actual knowledge.

67.     In addition, Pyramid violated Section 2330.5 of the Spyware Act, which proscribes certain conduct, including "misrepresenting and

14

deceptive acts with regard to the computer of an authorized user in this Commonwealth[.]" *Id.* at § 2330.5.

68.    Because POM is the distributor of the POM Game, it is entitled to seek relief under the Spyware Act against Pyramid. *See id.* at § 2330.9(a)(1) (providing that "[t]he following persons may bring a civil action against a person who violates this act . . . including "[a] provider of computer software who is adversely affected by the violation").

69.    Specifically, "[i]n addition to any other remedy provided by law," *id.* at § 2330.9(b), POM is entitled to:

a.    an injunction restraining Pyramid from any further violations of the statute; *see id.* at § 2330.9(b)(1);

b.    "damages in an amount equal to the greater of . . . [a]ctual damages arising from the violation, or [u]p to $ 100,000 for each violation, as the court considers just[;]" *id.* at § 2330.9(b)(2); and

c.    reasonable fees and costs. *See id.* at § 2330.9(d) ("A plaintiff who prevails in an action filed under this section is entitled to recover reasonable attorney fees and court costs.").

WHEREFORE, POM requests that this Court enter judgment in favor of POM and against Pyramid on this Count III, and: (i) enjoin Pyramid permanently from copying, downloading, using, selling and/or disseminating any confidential business information of POM, including without limitation the cash-out data, and require Pyramid to destroy or return any copies of such confidential information, including the cash-out data, in its possession; (ii) award POM actual and compensatory damages, or $100,000 for each violation of the Spyware Act, whichever is greater; (iii) award POM its reasonable fees and costs; (iv) award POM punitive damages on the basis of Pyramid's willful and malicious conduct; and (v) such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 7, 2023

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Eric J. Schreiner (No. 76721)
Shohin Vance (No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Eml: mhaverstick@kleinbard.com
eschreiner@kleinbard.com
svance@kleinbard.com

*Attorneys for POM of Pennsylvania*