### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| POM OF PENNSYLVANIA, LLC, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : No. 2:23-cv-04348-JMY |
| | : |
| PYRAMID TECHNOLOGIES, INC., | : |
| | : |
| *Defendants.* | : |

### JOINT REPORT OF RULE 26(f) MEETING

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the Parties conferred on January 12, 2024, and submit the following report of their meeting for the Court's consideration:

**1. Discussion of Claims, Defenses and Relevant Issues**

**Statement of Plaintiff POM of Pennsylvania, LLC ("POM")**:

Claims and factual background: POM's claims in this action are based on the following facts. POM distributes legal, electronic games of skill marketed with the trade name "Pennsylvania Skill" (the "POM Game") in Pennsylvania. The POM Game is a cash-operated video machine that offers the skillful player the ability to win, on every play, at least 105% of the player's consideration. The POM Game accepts cash through a bill acceptor. It is unable to dispense cash through this mechanism. Instead, every POM Game is manufactured with an internal printer. These printers are manufactured by Defendant Pyramid Technologies, Inc. ("Pyramid"). When a player desires to stop play and be paid out for any winnings, the player presses a cash out button. Then, the internal printer prints a voucher that the player may redeem for cash. After a POM Game player cashes out and receives a voucher, the player can redeem it

165080984.3

in primarily two ways: (1) presentation of the voucher to attendant at the game's location, for instance a bartender, in which case the bartender will hand the player the cash amount printed on the voucher; or, (2) through a machine called a ticket redemption terminal ("TRT"), which—much like an ATM—will dispense the cash amount printed on the voucher. Many POM Game locations in Pennsylvania also have TRTs.

Pyramid also designs and markets Sentry software and a software tablet ("Sentry") that is used with the POM Game and similar type games. Pyramid asserts that Sentry is used by operators and/or TRT's to validate winning tickets from the POM Game before such tickets are paid.

POM has learned that Pyramid, though Sentry, is accessing and collecting confidential and proprietary POM financial data from the POM Game—cash-out data that includes the precise amount cashed out by every player using the POM Game. Neither POM nor any other person or entity with proper authority authorized Pyramid to access and collect this data, which reveals the macro performance of each POM Game. POM also has learned that Pyramid, through Sentry, is emailing encrypted data, taken from the POM Game, to a third party called the Tuna Group without authorization or consent.

Threshold and primary issues: The threshold issues in this case are raised by Pyramid's Motion to Dismiss POM's Complaint and supporting Memorandum of Law (Docket Nos. 15 and 16), filed on January 9, 2024, which POM will oppose. The primary issues for POM in this case include: (i) how and when Pyramid accessed and acquired POM's confidential financial data; (ii) how much of POM's confidential financial data Pyramid has accessed and acquired; (iii) what Pyramid has done with this confidential data; (iv) when and to whom Pyramid has disclosed this data; and, (v) Pyramid's relationship with the Tuna Group and its disclosure of confidential data from the POM Game to the Tuna Group.

165080984.3

Discovery: POM will need to conduct discovery on the issues described above to discover the relevant information related to each of these issues. POM has served interrogatories and documents requests on Pyramid related to these issues and reserves its right to serve further written discovery. POM also intends to seek depositions of Pyramid employees and/or representatives once it has received responses to its written discovery and requested documents. In addition, POM will seek third party discovery, including depositions and documents, from the Tuna Group and any other third parties to whom Pyramid has disclosed any of POM's confidential data.

Motions: As stated above, Pyramid has filed a Motion to Dismiss POM's Complaint. The Parties also believe that they may file summary judgment motions after the close of discovery.

**Statement of Pyramid Technologies, Inc. ("Pyramid"):**

Claims and factual background: This lawsuit is an attempt to use the federal court system to bully a supplier. Pyramid supplies the Phoenix Printer ("Printer") that POM and its parent company use in many games, including the Pennsylvania POM Game (the "POM Game") marketed by POM. *See* Complaint ¶¶ 7-13. POM made the decision to incorporate the Printer as a component of the POM Game. *See* Compl. ¶ 13. The Printer is a necessary component of the POM Game as the Printer enables payout data from the game to be printed on a ticket. Compl. ¶¶ 11-15. The printed ticket voucher consists, among other things, of information printed on the face of the ticket indicating the amount of cash for which the ticket should be redeemed. *See* Compl. ¶ 15 (noting that "the cash amount" is printed on the face of the ticket itself). Contrary to POM's assertions there is nothing proprietary or confidential regarding this information on the face of the ticket. Owners of locations where POM Game units are used (typically owners of gaming establishments, such as convenience stores), need the ticket in order to provide users with purported winnings. Compl. ¶¶ 14-16. Critically, the information printed on the tickets is public and available to anyone in a gaming establishment within vicinity of the POM Game, especially as the tickets state

3

the payout information with the winning amounts. *See* Compl. ¶ 15 (noting that the cash amount is printed on the ticket itself).

Pyramid also markets software and a software tablet (the Sentry Security Module, also known as "Sentry"). *See* Compl. ¶¶ 20-21 (incorrectly asserting that the Sentry is "TRT software"). The Sentry validates payout information printed on the face of the ticket produced from gaming devices, including the POM Game). *Id.* As POM knows, because it—not Pyramid—integrated the Printer as a component of the game, the POM Game tells the Printer through one-way transmission what to print. In turn, the Printer prints the ticket, then the ticket is read by an attendant or a Ticket Redemption Terminal ("TRT") for a cash payout. Sentry allows printing of the QR Code, and the Sentry software allows customers to decrypt that QR code using the tablet or the TRT. Sentry is designed to interact with the POM Game, as well as other gaming devices produced by other manufacturers. Compl. ¶ 23.

POM's underlying motivation in filing its lawsuit is evidently the fact that third-party TRTs are able to integrate with Sentry, which may be used to read information from the Printers that are compatible with POM Games, as well as other gaming devices marketed by POM's competitors. Compl. ¶¶ 24-26. POM is presumably offended by this interoperability, which threatens POM's market share in Pennsylvania because the Printer and Sentry devices can be used with various games of skill, and not merely the POM Game. There is nothing illegal about such interoperability, nor with a competitive marketplace. POM incorrectly asserts that Pyramid has accessed "confidential" information from a device (the Printer) that POM itself chose to integrate into the POM Game. POM's efforts to invoke inapposite privacy laws relating to spyware and "computer" fraud are baseless. As explained in Pyramid's Motion to Dismiss, POM's allegations are fatally deficient for three basic reasons:

1. POM lacks standing because it has not been injured by Pyramid, whose technology actually facilitates use of the POM Game by POM's customers;

4

165080984.3

2. The Printer relies on information provided via one way communication from the POM Game to the Printer, solely directing the cash-out data printed, therefore any "access" is not unauthorized for purposes of the Computer Fraud and Abuse Act (Count I of POM's Complaint); and

3. this lawsuit does not concern information that is confidential.

In the alternative, if the Court concludes that this lawsuit does, in fact, concern confidential information—a contention that Pyramid opposes—this action is governed by a binding Non-Disclosure Agreement ("NDA") with choice of venue and law provisions that require dismissal.

Threshold and primary issues: The threshold issues in this case are raised by Pyramid's Motion to Dismiss POM's Complaint and supporting Memorandum of Law (ECF Nos. 15 and 16), filed on January 9, 2024. Pyramid understands that POM intends to oppose this Motion to Dismiss. As stated above, threshold questions for Pyramid in this matter include: (1) whether POM has standing to bring this suit; (2) whether there is any "access" under the Computer Fraud and Abuse Act, and whether the statutory elements of that law are met here; (3) whether any of the information at issue in this suit is actually "confidential"; and (4) whether the Pennsylvania Spyware Act applies to this action.

Discovery: Pyramid has served interrogatories and documents requests on POM related to these identified issues and reserves its right to serve further written discovery. Pyramid also intends to seek depositions of POM employees and/or representatives (and those of POM's parent company) once it has received responses to its written discovery and requested documents.

Motions: Pyramid has filed a Motion to Dismiss POM's Complaint. Among other things, the Motion to Dismiss challenges the subject matter jurisdiction of this Court. Pyramid requests that the Court address this threshold issue of its jurisdiction prior to hearing any other motion. Pyramid further requests that the Court toll discovery while the Motion to Dismiss remains pending. POM does not agree to and opposes Pyramid's request to toll discovery.

5

165080984.3

The Parties also believe that they may file summary judgment motions after the close of discovery.

**2. Informal Disclosures**

The Parties have exchanged initial disclosures pursuant to Federal Rule of Civil 26(a)(1). The Parties have not agreed to any other informal exchange of information but will seek additional information and documents through discovery.

**3. Formal Discovery**

The Parties refer the Court to Section 1 above for a discussion of the nature, sequence and timing of formal discovery.

The Parties intend to conduct written and documents discovery followed by depositions of employees and/or representatives of the Parties. Pyramid also intends to seek depositions from POM's parent, Pace-O-Matic, Inc. Third party discovery also likely will be necessary. The Parties agree that fact discovery and expert discovery should occur consecutively and further agree that fact discovery in this matter does not need to be conducted in phases.

The Parties agree that a fact discovery deadline approximately 120 days from the date of the Rule 16 pretrial Conference is appropriate. Accordingly, the Parties propose a fact discovery deadline of May 31, 2024. Pyramid respectfully requests that the Court toll this discovery deadline given the outstanding Motion to Dismiss in this matter. Given that the Court may lack subject matter jurisdiction, Pyramid requests that the Court toll discovery until the resolution of the Motion. Briefing on the Motion is scheduled to close on January 30, 2024. POM does not agree to and opposes Pyramid's request to toll discovery.

At this time, the Parties do not currently anticipate any issues regarding either the disclosure or the discovery of electronically stored information ("ESI"), including the form or

6

165080984.3

forms in which it should be produced, or claims of privilege. The Parties propose that ESI be produced to the requesting party with searchable text, in a format to be decided between the Parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF. Unless otherwise agreed to by the Parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, should be produced in native format. The Parties will continue to confer about the nature, production, and potential confidentiality of ESI.

**4. Expert Witness Disclosures**

The Parties propose the following with respect to the timing and sequence of disclosure of the identity and anticipated testimony of expert witnesses:

i)      Disclosure of expert reports thirty (30) days after the close of fact discovery;

ii)     Disclosure of rebuttal expert reports, if any, thirty (30) days after the disclosure of expert reports; and

iii)    Completion of expert depositions withing thirty (30) days of the disclosure of the deadline for disclosure of rebuttal expert reports.

**5. Early Settlement or Resolution**

The Parties have recently started informal settlement discussion on their own in an effort to determine if an early resolution of this matter is possible. The Parties also agree that they are open to a settlement conference or mediation before a United States Magistrate Judge or private mediator.

165080984.3

**6. Magistrate Jurisdiction**

The Parties discussed having this matter transferred to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, and the Parties respectfully decline such a transfer.

**7. Trial Date**

The Parties propose that a trial be scheduled in February or March 2025. The Parties respectfully request a date certain for the commencement of trial.

**8. Other Matters**

The Parties are not aware of any other matters that need to be addressed that are not discussed above.

[Signature Page Follows]

165080984.3

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Eric J. Schreiner (No. 76721)
Shohin Vance (No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Eml: mhaverstick@kleinbard.com
eschreiner@kleinbard.com
svance@kleinbard.com

*Attorneys for Plaintiff POM of Pennsylvania, LLC*

/s/ Barak Cohen
Barak Cohen, Admitted *pro hac vice*
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Ph: (202) 654-6200
Eml: BCohen@perkinscoie.com

Thomas J. Tobin, Admitted *pro hac vice*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Ph: (206) 359-8000
Eml: TTobin@perkinscoie.com

Timothy J. Ford (No. 325290)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Ph: (215) 575-7017
Eml: tford@dilworthlaw.com

*Attorneys for Defendant Pyramid Technologies, Inc.*

Date:  January 17, 2024

9

165080984.3