**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| POM OF PENNSYLVANIA, LLC, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 2:23-cv-04348-JMY |
| | : | |
| PYRAMID TECHNOLOGIES, INC., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| | : | |

**PLAINTIFF POM OF PENNSYLVANIA, LLC'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

**I.      INTRODUCTION**

Plaintiff POM of Pennsylvania's ("POM") has not filed this lawsuit to corner the gaming industry market in Pennsylvania by attacking a supplier, as Defendant Pyramid Technologies, Inc. ("Pyramid") alleges in its Motion to Dismiss Plaintiff POM of Pennsylvania's ("POM") Complaint (the "Motion"). This allegation is pure hyperbole. Indeed, it makes little sense that POM could achieve such an objective by bringing a lawsuit against a software company like Pyramid. POM has brought this lawsuit for a simple and straightforward reason—to protect its games from being surreptitiously accessed without authorization by Pyramid's Sentry software and to prevent Pyramid, through Sentry, from siphoning POM's confidential business information from these games for its own use. That is what POM's Complaint addresses.

Pyramid's Motion provides no legitimate basis for this Court to dismiss POM's Complaint. Pyramid makes five basic arguments in support of its Motion. Each of Pyramid's arguments lack any merit.

First, Pyramid argues that POM lacks standing because it allegedly has not pleaded concrete harm. *See* Memorandum of Law of Defendant Pyramid Technologies. Inc. in Support of its Motion to Dismiss Plaintiff's Complaint (ECF No. 16) ("Pyramid's MOL") at p. 9-12, §III(A). Pyramid's argument misapplies the law governing standing and ignores the allegations of POM's Complaint. POM has pleaded concrete harm necessary to establish standing under applicable law and, consequently, the Court should reject Pyramid's standing argument.

Second, Pyramid contends that POM has not adequately pleaded the required elements for its claims under Computer Fraud and Abuse Act, (the "CFAA"), 18 U.S.C. § 1030. *Id.* at p. 13-21, §III(B). Specifically, in scattershot fashion, Pyramid makes five separate arguments: (i) POM has not adequately pleaded that the POM Game[1] is a "protected computer" under the CFAA; (ii) POM has not adequately pleaded that Pyramid accessed the POM Game; (iii) if Pyramid accessed the POM Game, its access was authorized; (iv) POM has not pleaded it suffered damages; and (v) the CFAA does not address the activity alleged in the Complaint. *Id* at p. 15-21, §III(B)(3)-(7). Each of these arguments fail. The Complaint adequately pleads the necessary elements of POM's claims under the CFAA, including that the POM Game is a protected computer, that Pyramid accessed the POM Game without authorization, and that POM has suffered damages. Therefore, there is no basis for this Court to dismiss POM's CFAA claims.

Third, Pyramid argues that Complaint does not plead a valid claim under the Pennsylvania Consumer Protection Against Computer Spyware Act, (the "Spyware Act"), 73 P.S. §§2330.2, *et seq. Id.* at p. 22-24, §III(C)(1). The Complaint adequately pleads this claim. Accordingly, there is no basis for this Court to dismiss POM's Spyware Act claim.

---

[1] POM uses this term as defined in the Complaint.

Fourth, Pyramid argues that Complaint does not plead a valid claim for misappropriation and misuse of confidential business information. *Id.* at p. 24-25, §III(C)(2). The Complaint also adequately pleads this claim. As a result, there is no basis for this Court to dismiss POM's claim for misappropriation and misuse of confidential business information.

Fifth, Pyramid claims that  does not require, or even support, dismissal of the Complaint.

For all these reasons, as more fully explained below, the Court should deny Pyramid's Motion.

## II.    ARGUMENT

### A.    POM's Complaint Sufficiently Pleads Standing.

Pyramid contends that "[b]ecause POM was not injured by Pyramid's conduct, as alleged in the Complaint, POM lacks standing to pursue this action." *See* Pyramid's MOL at p. 8. Pyramid's standing argument focuses solely on the first element of standing—"an injury in fact"—and in particular on Pyramid's claim that POM "has not suffered concrete harm." *Id.* at p. 9. Courts have recognized that the bar for satisfying the injury in fact element of standing is low. Indeed, in an appeal that "center[ed] entirely on the injury-in-fact element of standing—more specifically, on the concreteness requirement of that element," the Third Circuit noted:

> In the context of a motion to dismiss, we have held that the [i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[ ] some specific, identifiable trifle of injury. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.

3

*In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633-34 (3d Cir. 2017) (citations and internal quotation marks omitted).

Against this backdrop, as discussed more fully below, the allegations of the Complaint plainly establish that under applicable law POM has standing to bring its claims. Therefore, the Court should reject Pyramid's standing challenge.

### 1.    Pyramid's Standing Challenge is a Facial Challenge, not a Factual Challenge.

As a threshold matter, Pyramid incorrectly suggests that its challenge to standing is factual, not facial.[2] *See* Pyramid's MOL at p. 9. That simply is not the case, because Pyramid readily admits that it is challenging POM's standing because the facts pleaded in the Complaint allegedly do not establish standing. *Id.* at p. 8 (claiming "POM was not injured by Pyramid's conduct, *as alleged in the Complaint*")(emphasis added); *see also In re Horizon*, 846 F.3d at 632 (concluding challenge to standing was facial challenge because it was based on argument that pleaded facts did not establish standing). Indeed, even a cursory review of Pyramid's standing argument demonstrates that it is based on the purported insufficiency of the allegations pleaded in POM's Complaint. *See* Pyramid's MOL at p. 9-12. This distinction is significant because in a facial challenge a court applies the same standard as a motion to dismiss under Rule 12(b)(6) and must accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences from those facts in plaintiff's favor. *See In re Horizon*, 846 F.3d at 633. That is the standard that the Court should apply here. Nevertheless, regardless of whether the Court considers Pyramid's challenge to standing to be facial or factual, POM's Complaint establishes that POM has standing to bring its claims.

---

[2] There are two types of standing challenges that can be made under Federal Rule of Civil Procedure 12(b)(1)—a facial or a factual attack. *See In re Horizon*, 846 F.3d at 632.

### 2.   POM has Pleaded Concrete Harm Sufficient to Demonstrate the Injury in Fact Element of Standing.

POM's Complaint pleads concrete harm sufficient to demonstrate an injury in fact, as required to establish standing. The United States Supreme Court recently explained what constitutes concrete harm for purposes of standing:

> [C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.
>
> Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.

*TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021) (citations omitted). The *TransUnion* Court found that in assessing concrete harm, a court should: (i) consider "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," [3] *id.* at 424 (citation omitted); and (ii) "afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation," *id.* at 425 (citation omitted). The *TransUnion* Court further noted that risk of future harm can establish standing to seek forward-looking injunctive relief to prevent the harm as long as the risk of harm is substantial. *Id.* at 435.

POM's Complaint sufficiently pleads several types of harm that, under *TransUnion*, establish concrete harm. *First*, POM's Complaint pleads tangible monetary harm because in its CFAA claim, POM pleads that it suffered "damage." *See* Complaint (ECF No. 1) at ¶47.

---

[3] The *TransUnion* Court also found that a plaintiff's harm does not need to be "an exact duplicate" in order to have a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American Courts." *See TransUnion*, 594 U.S. at 433.

"Damage" is defined under the CFAA as "any impairment to the integrity or availability of data, a program, a system or information." *See* 18 U.SC.A. § 1030(e)(8); *see also U.S. v. Yucel,* 97 F. Supp.3d 413, 420 (S.D.N.Y. 2015) (finding that "damage" under CFAA is caused by impairing integrity of computer system where actions of third party cause computer system to no longer operate as it did when it first came in to owner's possession and have an unwanted characteristic that negatively impacts the value of the computer system unless time and money are spent to remove it). POM sufficiently pleads "damage" because it has alleged in the Complaint that Pyramid, through Sentry, has impaired the integrity of the POM Game—*i.e*, by altering the original operation of the printer in the POM Game through Sentry and causing it to add a second QR code to tickets that was never intended to print there. *See* Complaint (ECF No. 1) at ¶¶25-29, 39. POM does not need to plead the exact amount of its monetary loss resulting from this "damage" to establish concrete harm, although POM will incur substantial costs to modify the POM Game so Sentry cannot access its confidential data, but POM has further pled that it exceeds $5,000. *Id.* at ¶47.

*Second,* POM's Complaint pleads tangible monetary harm because in its CFAA claim, POM pleads that it suffered "loss." *Id.* "Loss" is defined under the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *See* 18 U.SC.A. § 1030(e)(11). POM pleads "loss" because it alleges in the Complaint that it has incurred response and damage assessment costs, *i.e.*, costs of

6

investigation and remediation.[4] *See* Complaint (ECF No. 1) at ¶47. POM does not need to plead

the exact amount of its monetary loss resulting from this "loss" to establish concrete harm, but it

has further pled that it exceeds $5,000. *Id.*

Pyramid generally argues in its Memorandum of Law that POM's allegations of

"damage" and "loss" are not concrete harm under *TransUnion*. *See* Pyramid's MOL at p. 10.

This argument lacks any merit. As set forth above, the "damage" and "loss" alleged by POM are

precisely the type of tangible harms that *TransUnion* identified as concrete harm for purposes of

standing. *See TransUnion LLC,* 594 U.S. at 425. Furthermore, in its Memorandum of Law,

Pyramid attempts to limit the "damage" and "loss" POM has alleged to three specific categories:

harm to POM's data, loss of sales of TRT's and costs of investigation and remediation. *See*

Pyramid's MOL at p. 10-12. This argument mischaracterizes the allegations in the Complaint.

The complete allegation that Pyramid references for this argument makes clear that these are just

examples of "damage" and "loss," but not an exhaustive list. *See* Complaint (ECF No. 1) at ¶47

("POM has suffered damage and loss by reason of these violations, *including without limitation*,

harm to POM's data, loss of sales of POM-approved TRT, and costs of investigation and

remediation, in an amount to be proved at trial, but in any event, well over $5,000 aggregated

over a one-year period.") (emphasis added).

---

[4] Pyramid argues in its Memorandum of Law that this is not concrete loss because "[t]here is nothing to investigate or remediate" as "[t]he printer works as intended." *See* Pyramid's Memorandum of Law at p. 12. This argument fails for two reasons. First, the operation of the printer is not the focus of this lawsuit, as the printer is an internal component of the POM Game that does not send confidential data to Pyramid. Thus, whether the printer works as intended and prints tickets is not the point. Pyramid's unlawful accessing of confidential data, through Sentry, is the basis of this lawsuit. Second, there most certainly is something that POM had to investigate and remediate—Sentry's  interaction with the POM Game and its unlawful siphoning of POM's confidential data. As pleaded in the Complaint, POM has incurred costs (*i.e.*, "loss") in connection with its investigation and remediation efforts.

*Third*, POM's Complaint pleads concrete, intangible harm because it pleads that Pyramid, through Sentry, secretly has accessed and collected POM's confidential financial data without authorization. *See* Complaint (ECF No. 1) at ¶¶20-32. This intangible harm—the unauthorized accessing and collecting of POM's confidential business information—is concrete harm because it bears a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. *See TransUnion*, 594 U.S. at 425. Specifically, it closely resembles claims for misappropriation and misuse of confidential business information and trade secrets, which have long been recognized as valid causes of action in Pennsylvania and other states. *See, e.g., Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F.Supp.3d 659, 68-81 (E.D. Pa. 2018) (recognizing cause of action under Pennsylvania common law for procuring confidential business information by improper means); *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708-09 (Pa. Super. 2005) (same); *Morgan's Home Equipment Corp. v. Martucci,* 136 A.2d 838, 842-43 (Pa. 1957) (recognizing cause of action for misappropriation of trade secrets). Under *TransUnion*, this is concrete harm that establishes standing for the CFAA, Spyware Act and misappropriation and misuse of confidential business information claims asserted in POM's Complaint.[5]

---

[5] In its Memorandum of Law, Pyramid argues that POM has not demonstrated concrete harm for its CFAA claim because "POM and its data were not harmed." *See* Pyramid's Memorandum of Law at p.10. In support of this argument, Pyramid contends that POM has not suffered any injury because Sentry's validation of tickets actually benefits POM. *Id.* Pyramid makes a similar argument in support of its claim that POM has not pled concrete harm to establish standing for its misappropriation and misuse of confidential business information claim. *Id.* at p. 12-13. This argument completely misses the point. The concrete harm to POM and its data, at a minimum, is Pyramid's unlawful accessing and collecting of POM's confidential business information. While POM disputes that it receives any indirect benefit from Sentry, whether POM receives a benefit is irrelevant to the issue of whether it suffers a concrete harm when Pyramid unlawfully accesses and collects its confidential data. It certainly does not negate the harm POM has suffered. Pyramid also argues that POM has not alleged concrete harm to support standing for its Spyware Act claim because it allegedly has asserted a bare statutory violation of the Spyware Act that cannot establish standing under *TransUnion*. *Id.* at p. 12. To repeat, POM has pled concrete harm in the form of Pyramid's unlawful accessing and collecting of its confidential

*Fourth*, POM also sufficiently pleads the risk of substantial future harm to establish standing for its requested injunctive relief. In addition to damages, POM's Complaint seeks injunctive relief as a remedy for each of the causes of action asserted in the Complaint. *See* Complaint (ECF No. 1) at p.10, 12 and 16. Both statutory causes of action asserted by POM expressly provide for injunctive relief. *See* CFAA, 18 U.S.C.A. § 1030(g); Spyware Act, 73 P.S. §2330.9(b). Moreover, POM's Complaint pleads that Pyramid, through Sentry, has accessed and collected POM's confidential financial data without authorization. *See* Complaint (ECF No. 1) at ¶¶20-32. POM's Complaint further pleads that: (i) this data will allow Pyramid to analyze and infer other financial data that is proprietary to POM, *id.* at ¶34; (ii) Pyramid's conduct has caused irreparable injury to POM, *id.* at ¶¶49 and 57; and (iii) Pyramid will access and/or use POM's confidential information unless enjoined, *id.* at ¶¶50 and 56. These allegations establish an additional basis for standing to seek injunctive relief.

In short, POM's Complaint sufficiently pleads multiple concrete harms that establish its standing.

Pyramid cites *TransUnion* in its Memorandum of Law in support of its argument that POM has not alleged concrete harm to establish standing, but *TransUnion* actually supports the conclusion that POM has standing. *See* Pyramid's MOL at p. 9. In *TransUnion*, plaintiffs sued the defendant credit reporting agency for violating the Fair Credit Reporting Act by failing to use reasonable procedures to ensure the accuracy of their credit files. *See TransUnion*, 594 U.S. at 417. Certain plaintiffs' inaccurate credit reports were provided to third-party businesses, while other plaintiffs' inaccurate credit reports were not provided to third-party businesses and were

---

business information. It has not pled just a bare statutory violation. This harm is sufficient to confer standing under *TransUnion*. *See TransUnion,* 594 U.S. at 425.

only maintained in defendant's internal files. *Id.* Applying the standing principles discussed above, the Court found that plaintiffs whose credit reports were provided to third-party businesses had standing while plaintiffs whose credit reports were not provided to third-party business lacked standing. *Id.* The Court found that plaintiffs whose credit reports were disclosed to businesses suffered concrete harm because their injury bore a close relationship to a harm traditionally recognized as providing a basis for a lawsuit—reputational harm associated with the tort of defamation. *Id.* at 432. Like the plaintiffs in *TransUnion* who had standing, POM's confidential information actually was obtained by a third party (here, Pyramid) and POM's injury (the unauthorized accessing and collecting of POM's confidential business information) bears a close relationship to a harm traditionally recognized as providing a basis for a lawsuit (misappropriation and misuse of confidential business information and trade secrets). *See supra,* p.8. Consequently, *TransUnion* supports the conclusion that POM, like the *TransUnion* plaintiffs whose information was disclosed, has alleged a concrete injury sufficient to establish standing.[6]

Recent Third Circuit cases also have found concrete harm necessary for standing under circumstances similar to those of the present case. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154-56, 159 (3d Cir. 2022) (applying *TransUnion* in a data breach case and finding concrete harm sufficient to establish plaintiff's standing where plaintiff's alleged injury was "concrete, as intangible harms like the disclosure of private information qualify as concrete."); *In re Google*

---

[6] Pyramid also cites a recent district court decision in its Memorandum of Law, *In re BPS Direct, LLC*, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023). *See* Pyramid's MOL at p. 10-11. This decision is readily distinguishable because the court found plaintiffs—website users who alleged that the retailer defendants had unlawfully tracked their keystrokes and webpages while they were browsing the retailers' websites—did not have concrete injury to support standing because they had not alleged that they shared any confidential or sensitive, personal information with defendants or that defendants accessed such information. *Id.* at *1 and *12. In contrast, POM has specifically pleaded that Pyramid accessed and collected POM's confidential business information without authorization.

*Inc. Cookie Placement Consumer Privacy Litigation,* 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any third party, tracks a person's internet browser activity without authorization."); *Susinno v. Work Out World, Inc.*, 862 F.3d 346, 350-52 (3d Cir. 2017) (finding plaintiff had alleged sufficient concrete injury to establish standing to bring claim under Telephone Consumer Protection Act and stating: "Where a plaintiff's intangible injury has been made legally cognizable through the democratic process, and the injury closely relates to a cause of action traditionally recognized in English and American courts, standing to sue exists.").

In sum, the Court should reject Pyramid's standing argument.

**B.      The Complaint Pleads Valid CFAA Claims.**

Pyramid next argues that the Complaint fails to plead valid CFAA claims. *See* Pyramid's MOL at p. 13-21, §III(B). Pyramid makes five separate arguments in support of this contention, each of which lacks any merit. Pyramid's five arguments are separately addressed immediately below.

**1.      POM has Pleaded That the POM Game is a "Protected Computer."**

Pyramid first argues that POM has not pleaded a CFAA claim because "the POM Game is not a protected computer." *See* Pyramid's MOL at p. 15-16, §III(B)(3). Pyramid contends that the POM Game is not a "protected computer" because POM has not pleaded that it is connected to the internet and, therefore, "the game is not a 'protected computer as defined by the statute." *Id.* Pyramid simply is wrong because the CFAA definition of "protected computer" does not even mention connection to the internet and the cases that Pyramid cites do not establish such a requirement.

The starting point for this analysis is the definition of "protected computer" under the CFAA. The CFAA defines a "protected computer," in relevant part, as "a computer … which is

11

used in or affecting interstate or foreign commerce or communication …." *See* 18 U.S.C.A. § 1030(e)(2)(B). There is no requirement that the computer be connected to the internet. Pyramid cites a number of cases in its Memorandum of Law in support of its misleading argument that an internet connection is required, but none of these cases support that proposition. *See* Pyramid's MOL at p. 15-16 and n. 4. To the contrary, these cases simply found that an internet connection demonstrates that a computer is used in or affects interstate commerce. *See id.* In other words, these cases recognized that an internet connection is one fact that satisfies the CFAA's definition of "protected computer," but they did not hold that an internet connection is a requirement or the only way to demonstrate that a computer is a protected computer.

POM has pleaded that the POM Game is a "protected computer" because it has pleaded specific facts demonstrating that the POM Game is used in and affects interstate commerce. *See* Complaint (ECF No. 1) at ¶44.[7] That is all that the CFAA requires. Consequently, the Court should reject this specious argument.

---

[7] Paragraph 44 of POM's Complaint states: "The POM Game constitutes a 'protected computer' within the meaning of 18 U.S.C. § 1030(e)(2)(B) in that the POM Game is used in and affects interstate commerce, including because the POM Game is composed of components from States other than the State in which it is manufactured, as well as components or subcomponents imported into the United States from overseas; it was manufactured in a State other than the State in which it was used by end-users; the POM Game and/or its components were transported to Pennsylvania via channels of interstate transportation and commerce; the direct and indirect economic profits derived from the POM Games use are recognized in States other than Pennsylvania, including in Georgia, where POM and Pace-O-Matic are headquartered." *See* Complaint (ECF No. 1) at ¶44. These allegations distinguish this case from the decision in *Advantage Ambulance Group, Inc. v. Lugo*, 2009 WL 839085 (E.D. Pa. 2009), cited by Pyramid. *See* Pyramid's MOL at p. 15. In *Lugo*, the court found plaintiff did not sufficiently plead the computer was a "protected computer" because the complaint only repeated the statutory language, simply alleging "[T]he computer so accessed was used in interstate commerce." *Id.* at *2.

12

## 2.      POM has Pleaded That Pyramid Accessed the POM Game.

Pyramid next argues that POM has not pleaded a CFAA claim because "[t]here was no 'access' to a computer here." *See* Pyramid's MOL at p. 16-17, §III(B)(4). As a threshold matter, this argument relies upon factual assertions outside of the Complaint—Pyramid's explanation of how Sentry purportedly "pairs" with the printer—to argue that allegedly "there is no invasive activity occurring." S*ee* Pyramid's MOL at p. 17. "In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *See Liberty Mut. Fire Ins. Co. v. Harleysville Worcester Ins. Co.*, 524 F.Supp.3d 462, 467 (E.D. Pa. 2021). Here, the Complaint has no attachments and Pyramid has not cited any matters of public record or submitted any undisputedly authentic documents upon which POM's claims are based in support of its Motion. Thus, the Court should only consider facts alleged in the Complaint. Because Pyramid's argument is based on alleged facts outside of the Complaint, the Court should reject it for this reason alone.

Moreover, POM's Complaint plainly pleads that Pyramid, through Sentry, has accessed the POM Game, its internal printer and its confidential data. *See* Complaint (ECF No. 1) at ¶¶23-29, 32, 39 and 45-46. These allegations are more than sufficient to plead access at this stage of the case. Accordingly, the Court should reject Pyramid argument that POM has not pleaded that Pyramid accessed the POM Game.

## 3.      POM has Pleaded That Pyramid's Access was not Authorized.

Pyramid also argues that POM has not pleaded a CFAA claim because even if Pyramid accessed the POM Game, its access allegedly "was authorized by the operators of the locations where the game units were used." *See* Pyramid's MOL at p. 17-19, §III(B)(5). As a threshold

matter, this argument also relies upon factual assertions outside of the Complaint—Pyramid's contention that its access was authorized by operators of the locations where the POM Game is found because they purportedly are owners, lessees or licensees of the POM Game and have authority to grant Pyramid authorization to access the POM Game and its internal data.[8] S*ee* Pyramid's MOL at p. 17-18. For this reason alone, the Court also should reject it. *See, e.g., Liberty Mut. Fire Ins. Co.*, 524 F.Supp.3d at 467.

Moreover, POM's Complaint pleads that POM and/or its parent did not authorize Pyramid to access the POM Game or its confidential data. *See* Complaint (ECF No. 1) at ¶¶31, 38, 40 and 45-46. The Complaint also pleads that Pyramid "utilize[ed] Sentry to access data in the POM Game without authorization" (*id.* at ¶55) and that Pyramid was not an "authorized user" of the POM Game, which is "a person who owns or is authorized by the owner or lessee to use the computer" (*id.* ¶64). In other words, the Complaint pleads that Pyramid lacked any authorization to access the POM Game or its confidential data.

Nevertheless, Pyramid makes several meritless arguments in its Memorandum of Law that POM has not sufficiently pleaded lack of authorization. For instance, Pyramid contends that the Complaint does not explain how POM has authority with respect to granting access to the POM Game. *See* Pyramid's MOL at p. 18. But the Complaint pleads that POM is the distributor of the POM Game, which would give it such authority. *See* Complaint (ECF No. 1) at ¶7. Pyramid also contends that POM does not allege in the Complaint that: (i) the operators of locations where POM Games are located lack the ability to authorize Pyramid to access the POM

---

[8] This contention is false, as the location operators are not owners, lessees or licensees and do not have authority to grant Pyramid authorization to access the POM Game or its confidential data. All of this information, however, is outside of the allegations pleaded in the Complaint and is not properly considered on a motion to dismiss.

Game; or (ii) that these operators rescinded any access they presumably may have given to Pyramid. *See* Pyramid's MOL at p. 19. POM does not need to plead such allegations to state a claim where it specifically pleads in the Complaint that Pyramid was not given any authorization to access the POM Game or its confidential data. Furthermore, these contentions assume that the operators have the ability to grant authorization, which they do not, and in any case, as discussed above, involve allegations outside of the Complaint.

Finally, Pyramid's reliance on *Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F.Supp.2d 481 (D. Md. 2010), is misplaced. That case is inapplicable because the court found that defendants were authorized to access the computers and information they accessed. *See Oce*, 748 F.Supp.2d at 487. Here, in contrast, Pyramid is not the owner of the POM Game and the Complaint clearly pleads that Pyramid was not authorized to access the POM Game and POM's confidential business information.[9]

These allegations are more than sufficient to plead, at this stage of the case, that Pyramid was not authorized by anyone to access the POM Game or its confidential data.

### 4.    POM has Pleaded That it Suffered Damage and Loss.

Pyramid further argues that POM has not pleaded a CFAA claim because POM's claim under Section 1030(a)(4) [10] requires a loss of at least $5,000 in a one-year period and "POM has not suffered any damages or losses. POM has not, in fact, been harmed in any way." *See*

---

[9] Pyramid also cites *Brett Senior & Assocs., P.C. v. Fitzgerald*, 2007 WL 2043377 (E.D. Pa. July 13, 2007), in support of its argument that a person cannot be liable under the CFAA if they had lawful access to information. *See* Pyramid's MOL at p. 19. *Fitzgerald* also is easily distinguishable because the defendant, unlike POM in this case, accessed plaintiff's computer system and information at a time when he was still employed by plaintiff and, therefore, had authorization to do so. *Id.* at *3. POM has pleaded that Pyramid's access was not authorized so, unlike the defendant's access in *Fitzgerald* which was lawful, Pyramid's access was not lawful.

[10] In its Complaint, POM also pleads a CFAA claim for violation of Section 1030(a)(2). *See* Complaint (ECF No. 1) at ¶45.

Pyramid's MOL at p. 19-20, §III(B)(6). The Court should reject this argument because, as previously discussed, POM has sufficiently pleaded both "damage" and "loss" as defined under the CFAA. *See supra*, p. 5-7. Indeed, POM has not asserted "damage" and "loss" in "conclusory fashion" as Pyramid contends. *Id.* at 19. To the contrary, POM's Complaint pleads "damage" and "loss" under the CFAA consistent with the requirements of the statute. *See supra*, p. 5-7. It also pleads a basis for injunctive relief, which is an available remedy under the CFAA. *See* 18 U.S.C.A. § 1030(g). In short, POM's Complaint adequately pleads both "damage" and "loss" under the CFAA at this early stage of the case.

### 5.    The CFAA Addresses the Activity Alleged in POM's Complaint.

Lastly, Pyramid argues that POM's CFAA claim should be dismissed as it "is fatally deficient because it fundamentally distorts what the CFAA is meant to address." *See* Pyramid's MOL at p. 20-21, §III(B)(7). As a threshold matter, this argument is meaningless if the Court finds that POM has pleaded a valid CFAA claim as POM contends. If POM pleads the elements of a CFAA claim, as it has in its Complaint, then it logically follows that POM has not distorted or misused the statute.

Moreover, this argument itself distorts POM's CFAA claim and intentionally mischaracterizes that claim. POM's Complaint could not be clearer that POM's CFAA claim is intended to address Pyramid's unlawful accessing of the POM Game to collect POM's confidential business data. *See* Complaint (ECF No. 1). That is exactly what the CFAA is designed to remedy—unauthorized access of a "protected computer." POM is not, as Pyramid contends, seeking to punish the misuse of information through its CFAA claim. [11] *See* Pyramid's

---

[11] Indeed, POM has brought another cause of action in its Complaint, misappropriation and misuse of confidential business information, which will directly address any misuse of POM's confidential data.

MOL at p. 20. Through its CFAA claim, POM is seeking to address the fact that Pyramid had no right to access the POM Game and obtain POM's confidential data in the first place, regardless of how, or even if, Pyramid intends to use it.

Pyramid cites the injunctive relief that POM seeks in connection with its CFAA claim to support its argument. *Id.* But the injunctive relief POM seeks—enjoining Pyramid from "copying, downloading, using, selling and/or disseminating any confidential business information"—is an appropriate remedy to address Pyramid's unlawful access that already has occurred in violation of the CFAA. In addition, injunctive relief is expressly permitted as a civil remedy under the CFAA. See 18 U.S.C.A. § 1030(g). This requested relief does not demonstrate that POM is attempting to use the CFAA for an unintended purpose.

Pyramid also argues that the CFAA does not cover defendants who are obtaining information otherwise available to them, citing the Supreme Court's recent decision in *Van Buren v. United States*, 141S.Ct. 1648, 1652 (2021). *See* Pyramid's MOL at p. 20. But this argument is pointless, because Pyramid was not obtaining information that was otherwise available to it. Indeed, but for the unlawful and unauthorized operation of Sentry, Pyramid would have had no access to confidential data from the POM Game. Pyramid's assertion that the printer needs the confidential data to print a ticket is a red herring. *Id.* The printer is an internal component of the POM Game and does not itself send any confidential data to Pyramid. Pyramid only is able to access the POM Game and collect confidential data from it through the operation of Sentry. Thus, POM's confidential data was not otherwise available to Pyramid.

Additionally, *Van Buren* and the other cases Pyramid cites in support of its claim that "courts treat the misuse of data under the CFAA differently than the mere access of such data," such as *Teva*, 291 F.Supp.3d at 670 and *Dresser-Rand Co. v. Jones*, 957 F.Supp.2d 610, 620

17

(E.D. Pa. 2013), provide no support to Pyramid. *See* Pyramid's MOL at p. 20-21. These decisions all involved CFAA claims where an employee accessed the employer's computer system while employed and *with authorization* to do so, but then used the information accessed in a manner that was not authorized. The courts found that the CFAA did not apply to these claims because the defendants—unlike Pyramid—were authorized as employees to access the subject computers in the first instance and their subsequent misuse of information obtained was not actionable under the CFAA. Here, in contrast, POM's CFAA claim is based on Pyramid accessing the POM Game without any authorization.

In sum, all this Court needs to determine is whether POM has pleaded a valid CFAA claim. If it has, then POM is properly asserting rights under the CFAA and Pyramid's argument that POM is distorting the statute necessarily fails.

### C.    The Complaint Pleads a Valid Spyware Act Claim.

Pyramid's challenge to the sufficiency of the Spyware Act claim is similarly without merit.  Pyramid's lead argument in this regard—albeit woefully underdeveloped—appears to be that the Spyware Act was not "intended to address" the conduct alleged in the Complaint. *See* Pyramid's MOL at p. 22. Pyramid, however, fundamentally misconstrues the lens through which this claim must be assessed. Specifically, because the Spyware Act claim is predicated on a state statute, Federal courts are bound by the Pennsylvania rules of statutory construction, which provide, among other things, that "the letter of the statute is not to be disregarded under the pretext of pursuing its spirit," *Orson, Inc. v. Miramax Film Corp*., 79 F.3d 1358, 1374 (3d Cir. 1996) (citing 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")). Furthermore, "although the necessity and object of the statute, its legislative history, the former law, and other factors are to be considered by a court when the words of the statute are not

explicit, resort to such indicia of legislative intent is inappropriate when the statute's language is clear and unambiguous." *Kohr v. Raybestos-Manhattan, Inc.*, 522 F. Supp. 1070, 1074 (E.D. Pa. 1981) (citing 1 Pa.C.S. § 1921(c)). In turn, "[a] statute is ambiguous where there are two or more reasonable interpretations." *Vandegrift v. City of Philadelphia*, 228 F. Supp. 3d 464, 482 (E.D. Pa. 2017).

Against this backdrop, this Court should have little difficulty in rejecting the contention that the Spyware Act does not apply to Pyramid and the conduct alleged in the Complaint, as nothing in the plain language of the statute suggests that only "consumers" may avail themselves of its protections. To the contrary, Section 2330.9(a)(1) expressly creates a private right of action for "[a] provider of computer software who is adversely affected by [a] violation" of the Spyware Act.  73 P.S. § 2330.9(a)(1). In short, because Pyramid has failed to even allege an ambiguity in the Spyware Act (let alone meaningfully develop this line of argument in any meaningful way) gleaning a contrary legislative intent from extrinsic sources is inappropriate.

Next, Pyramid maintains that the Spyware Act claim should be dismissed because the Complaint "does not allege that Pyramid copied software or procured the copying of software onto the POM Game." *See* Pyramid MOL at p. 23. This argument is similarly unavailing. Specifically, although Pyramid is correct that copying software or "procur[ing] the copying onto the computer of an authorized user in this Commonwealth" is a prerequisite to finding a violation of Section 2330.3, its assertion that "POM does not allege that Pyramid copied software or procured the copying of software" is without merit.  Indeed, at the very heart of this dispute is the interception and transmission of POM's confidential proprietary data caused by unauthorized modifications made to the POM Games, which can only occur through "the copying of computer software or any component thereof[,]" 73 P.S. § 2330.2 (defining "cause to be copied"). As such,

19

Pyramid's assertion that the allegations in the Complaint do not involve copying should be rejected.

Along these same lines, Pyramid suggests that POM's Spyware Act claim should be dismissed because the Spyware Act's prohibition is limited to "'copying' of software or copying of software onto a computer in order to 'remove, disable or render inoperative security, antispyware or antivirus software installed on the computer.'" *See* Pyramid MOL at p. 23 (quoting 73 P.S. §§ 2330.3(3), (5)). This argument, however, is predicated on a misconception (if not misrepresentation) of the statute's plain language. Specifically, while interference with "antispyware or antivirus software installed on [a] computer" would undoubtedly violate the statute, Section 2330.3 of the Spyware Act also prohibits use of copied software to undertake "any other acts deemed to be deceptive[,]" 73 P.S. § 2330.3, which "[i]ncludes, but is not limited to . . . [a]n intentionally and materially false or fraudulent statement[; a] statement or description that intentionally omits or misrepresents material information in order to deceive the authorized user[; or a]n intentional and material failure to provide any notice to an authorized user regarding the download or installation of software in order to deceive the authorized user." *Id.* at § 2330.2 (defining "'deceptive' or 'deception'").  With these provisions in mind, Pyramid's conduct, as alleged in the Complaint, plainly satisfies the definitional criteria of "deception" under the Spyware Act.[12]

_____

[12] In this regard, Pyramid also maintains that its collection of user data from POM's Games is designed "to deter fraud" and, thus, not deceptive under the Spyware Act. See Pyramid MOL at p. 24. But this argument is not a challenge to the legal sufficiency of the Complaint, but rather, is premised on a factual disagreement. Similarly, insofar as Pyramid suggests that it "was, and remains, an 'authorized user,' as defined by the Spyware Act[,]" Pyramid MOL at 23 (citing 73 P.S. § 2330.2), this contention is also based on a factual disagreement regarding the scope and nature of Pyramid's authority relative to the POM Games. Accordingly, neither of these lines of argument are properly presented at the pleading stage.

In short, because the Complaint alleges ample facts to maintain a Spyware Act claim, the Court should reject Pyramid's various arguments in support of dismissing Count III.

### D. The Complaint Pleads a Valid Claim for Misappropriation and Misuse of Confidential Business Information.

Pyramid further asserts that the Complaint fails to plead a valid claim for misappropriation and misuse of confidential business information. *See* Pyramid's MOL at p. 24-25, §III(C)(2). Pyramid makes three separate arguments, each of which lacks any merit. Pyramid's three arguments are separately addressed immediately below.

### 1. POM has Sufficiently Pleaded That Pyramid Accessed and Collected POM's Confidential Business Information.

Pyramid first argues that '[t]here is nothing confidential about the payment information recorded on the Sentry module" and that the Complaint does not contain allegations "as to what information Pyramid has allegedly accessed." *See* Pyramid's MOL at p. 24. This argument ignores the allegations of the Complaint and applicable law.

Confidential information, for purposes of a claim for misappropriation and misuse of confidential business information, "includes information about one's business whether or not it constitutes a trade secret." *See Pierre & Carlo, Inc. v. Premier Salons, Inc.*, 713 F.Supp.2d 471, 481-82 (E.D. Pa. 2010) (quoting Restatement of Torts § 759 cmt. b). POM's Complaint sufficiently identifies the confidential business information at issue and that it is confidential. The Complaint alleges that:

- Pyramid, through Sentry, has intercepted POM's cash-out data from POM Games, which includes the precise amount cashed out by every player using the POM Games. *See* Complaint (ECF No. 1) at ¶¶28-30, 54.

- This is private financial information, which reveals the macro performance of POM Games at various locations where sentry is used. *Id.* at ¶¶31-33.

21

- This data will allow Pyramid and/or other third parties to analyze and infer other sensitive financial information proprietary to POM. *Id.* at ¶34.

- This data is confidential and kept in strict confidence by POM. *Id.* at ¶¶54-56.

These allegations adequately identify the business information at issue and its confidential nature. *See Teva,* 291 F.Supp.3d at 681 ("An allegation that the defendant improperly procured confidential business information, causing harm to the plaintiff, suffices to state a claim.").

The financial information at issue in the Complaint—all player cash-out data from any POM Game at a location using Sentry—is analogous to customer and aggregate sales data, which Pennsylvania courts repeatedly have found is confidential. *See, e.g.*, *Sandoz, Inc. v. Lannett Company, Inc.,* 2020 WL 7695960 at *5 (E.D. Pa. Dec. 28, 2020) (finding that "sales volume information may constitute confidential business information" in context of claim for conversion of confidential business information and denying motion to dismiss complaint); *Jazz Pharmaceuticals, Inc. v. Synchrony Group*, LLC, 343 F.Supp.3d 434, 444  (E.D. Pa. 2018) (finding complaint sufficiently alleged sales data was trade secret in context of motion to dismiss); *Jon Feingersh Photography, Inc. v. Pearson Education, Inc.*, 281 F.R.D. 234, 237 (E.D. Pa. 2012) (finding non-public financial data, which included revenue data, and sales projections were confidential). This is particularly the case where, like here, the information is aggregated and compiled. For example, in *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F.Supp.3d 617 (E.D. Pa. 2014), the court found customer usage data to be trade secret, noting:

> Nonetheless, "[a] compilation of data that has independent economic value can be protected as a trade secret." *Youtie,* 653 F.Supp.2d at 621–22 (citing cases). Thus, "[t]he fact that the same information can be gathered on any one customer by talking with the customer herself is irrelevant. The value in [a company's] customer information is in the compilation, categorization, and organization of information on thousands of customers, combined with the ability to search and format it into a readily usable form. This is what a competitor does not have and cannot easily recreate." *Latuszewski v. Valic Fin. Advisors, Inc.,* No. Civ.A.03–

22

540, 2007 WL 4462739, at *17 (W.D. Pa. Dec. 19, 2007), *aff'd,* 393 Fed.Appx. 962 (3d Cir.2010).

*Id.* at 706.

Pyramid argues that POM's information is not confidential because "Anyone observing the games would have seen the payment information at issue." *See* Pyramid's MOL at p. 24; *see also id.* at p. 1-3 and 7. This argument is disingenuous because it strains credulity to believe that a person would stand next to a POM Game for the entire time that a location is open each day, looking over the shoulder of players of the game, in order to collect information from winning tickets. It is even more difficult to believe that this same person would do this day after day at this location. Finally, it requires an even greater suspension of reality to believe that this could be done at all of the many locations where both POM Games and Sentry are found. It simply is not reasonably possible for a person to recreate POM's aggregate cash-out data. For the same reasons, this could not be done simply by talking to players. The court in *Synthes* rejected a similar argument that information was not confidential and trade secret because it could be obtained from customers, stating:

> Defendants' argument, however, rests on the notion that the allegedly misappropriated manufacturing and usage data consists of single product, single vendor, or single customer data. Quite to the contrary, the information constituted compilations of data. … The value of the information was in the "compilation, categorization, and organization of information" on thousands of customers and products, which could not be easily recreated by a competitor's mere talking with the customers. Indeed, although Defendants suggest that they could have gotten individual bits of this information from other vendors or customers, they fail to show that they could have recreated this volume of information.

*See Synthes*, 25 F.Supp.3d at 706-07.

Based on the foregoing, POM has sufficiently pleaded the confidential information element of its claim for misappropriation and misuse of confidential business information.

23

**2.    POM has Sufficiently Pleaded That Pyramid Acted Improperly.**

Pyramid next argues that it "has not acted improperly." *See* Pyramid's MOL at p. 25. POM also has sufficiently pleaded this element of its claim. POM has pleaded in the Complaint that Pyramid procured POM's confidential cash-out data by improper means through utilizing Sentry to access data in the POM Game without authorization. *See* Complaint (ECF No. 1) at ¶55; *see also id.* at ¶¶23-29, 32. POM's Complaint also pleads the facts underlying this allegation, including that: (i) POM and/or its parent did not authorize Pyramid to access the POM Game or its confidential data (*id.* at ¶¶31, 38, 40 and 45-46); and (ii) Pyramid was not an "authorized user" of the POM Game, which is "a person who owns or is authorized by the owner or lessee to use the computer" (*id.* ¶64). In other words, the Complaint pleads that Pyramid lacked any authorization to access the POM Game or its confidential data, but nevertheless surreptitiously did so. Secretly accessing POM's confidential business information without consent or authorization satisfies the improper means element. *See Teva*, 291 F.Supp.3d at 681 (finding improper means element satisfied where complaint alleged defendant improperly procured confidential business information through another person).

**3.    POM has Sufficiently Pleaded That it Suffered Harm.**

Pyramid's last argument is that "POM did not suffer any harm." *See* Pyramid's MOL at p. 25. That is not true. POM has sufficiently pleaded harm to support its misappropriation and misuse of confidential business information claim. POM's Complaint pleads that Pyramid, through Sentry, has obtained POM's confidential cash-out data. *See* Complaint (ECF No. 1) at ¶¶28-33, 55. It also alleges that this data will allow Pyramid to infer other sensitive financial information proprietary to POM and that it is being used by Pyramid. *Id.* at ¶¶34-35, 56. POM's Complaint further alleges that this conduct has caused economic harm and irreparable harm to

25

POM's business. *Id.* at ¶57. Allegations that Pyramid possesses POM's confidential business information and is free to use it are sufficient to demonstrate harm. Furthermore, as discussed above, in its Complaint POM pleads specific economic damages. *See supra*, p. 5-7. In short, the Complaint sufficiently pleads POM suffered harm for this early stage of the case to support POM's claim for misappropriation and misuse of confidential business information.







## III.    CONCLUSION

This Court should reject Pyramid's arguments for dismissing the Complaint. POM has

standing and the Complaint adequately plead claims under the CFAA, the Spyware Act and for

misappropriation and misuse of confidential business information. In addition, the

███████ and plainly does not warrant dismissal of the Complaint. Therefore, for all of the

reasons set forth above, POM respectfully request that the Court deny Pyramid's Motion.[15]

Respectfully submitted,

Dated: January 23, 2024                     /s/ Matthew H. Haverstick
                                            Matthew H. Haverstick (No. 85072)
                                            Eric J. Schreiner (No. 76721)
                                            Shohin Vance (No. 323551)
                                            KLEINBARD LLC
                                            Three Logan Square, 5th Floor
                                            1717 Arch Street
                                            Philadelphia, PA 19103
                                            Ph: (215) 568-2000
                                            Eml: mhaverstick@kleinbard.com
                                            eschreiner@kleinbard.com
                                            svance@kleinbard.com

                                            *Attorneys for Plaintiff POM of Pennsylvania, LLC*

---

[15] POM respectfully submits that there is no basis to dismiss the Complaint. In the event that the Court is inclined to dismiss the Complaint for pleading deficiencies, however, POM respectfully requests that the Court instead grant POM leave to amend the Complaint to address any deficiencies. *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (stating that if complaint is vulnerable to dismissal for pleading deficiencies, district court must permit curative amendment, unless an amendment would be inequitable or futile).

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Complaint to be served via the Court's CM/ECF system on all counsel of record.

Respectfully submitted,

Dated: January 23, 2024

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Eric J. Schreiner (No. 76721)
Shohin Vance (No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Eml: mhaverstick@kleinbard.com
eschreiner@kleinbard.com
svance@kleinbard.com

*Attorneys for Plaintiff POM of Pennsylvania, LLC*