**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PYRAMID TECHNOLOGIES, INC.,<br><br>Defendant. | Civil Action No. 2:23-cv-04348-JMY<br><br><br>ORAL ARGUMENT REQUESTED |

**REPLY BRIEF IN SUPPORT OF DEFENDANT PYRAMID TECHNOLOGIES, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Contrary to Plaintiff POM of Pennsylvania LLC's ("POM") Opposition to Pyramid Technologies, Inc.'s ("Pyramid") Motion to Dismiss, the Complaint is deficient and should be dismissed for three independent reasons, any of which require the Court to dismiss POM's complaint.

*First*, the information at issue in this suit is public, not confidential. Each of POM's three causes of action focus on the purported confidentiality of information that POM's game of skill (the "POM Game") sends to an internal printer produced by Pyramid, which prints the information on a ticket given, in plain view, to third-party players. *See* Complaint ("Compl.") (ECF No. 1) ¶¶ 52, 53–58, 69. Because there can be nothing confidential about such information, POM's claims necessarily fail. ███████████████████████████████████

████████████████████████ ████████████████████████████

████████████████████████████████

*Second*, POM lacks standing because it has not suffered an injury-in-fact. In its Opposition, POM strives to overcome this deficiency by asking the Court to look to other potential injury not alleged in the Complaint. Pl. Opp. Br. of Mot. to Dismiss ("Opp. Br.") (ECF No. 25) at 7. Potential injury vaguely alluded to outside of the pleadings are not the type of concrete harm sufficient to withstand judicial scrutiny. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (requiring harms that are "concrete and particularized" and "actual or imminent").

*Third,* POM's allegations are simply not plausible, failing to meet the required elements of the Spyware Act and Computer Fraud and Abuse Act ("CFAA") claims.

**ARGUMENT**

I.     **The Information at Issue Is Available to the Public and Not Confidential.**

The information at issue here is decidedly not confidential. As the Complaint admits, the information is mere payout data printed on the face of a ticket and provided to a player. Compl. ¶ 15. This information is given to a third-party, in plain sight, unencrypted, in a form that anyone

standing around the machine may also view. Despite this admission, underlying POM's contentions is that the information at issue is confidential. In the CFAA and Spyware Act claims (Counts I and III), POM asks for an injunction prohibiting Pyramid from "disseminating any confidential business information of POM." Compl. ¶¶ 52, 69. Likewise, POM premises Count II on the misappropriation of POM's "confidential business information." Compl. ¶¶ 53–58. To the extent each count relies on the underlying information being confidential, each fails as the information is available to the public and not confidential.

POM alleges that the payout information on the printed ticket is "kept in strictest confidence by POM." Compl. ¶ 54. This contention makes no sense. Publicly-accessible establishments, such as a convenience stores or bars, invite players to play the POM Game in public spaces. See Compl. ¶¶ 14-17. Individual members of the public then play on the POM Game to win cash prizes. See Compl. ¶¶ 21-22. A winning player can cause the POM Game to print a ticket that the player can redeem for cash. See Compl. ¶ 11-12. Printed on the face of this ticket is the amount of the cash payment. See Compl. ¶ 15. Another third-party, a ticket attendant such as a barkeeper, may read the purportedly confidential information on the ticket for redemption of the cash prize. Compl. ¶ 15. Pyramid's Sentry Security Module ("Sentry") assists owners of gaming establishments by allowing printing of a QR code on the tickets that establishment owners can use to validate tickets through the Sentry module. See Compl. ¶¶ 23, 27-28. Caselaw offered by POM regarding the aggregation of such information constituting confidential business information is unavailing.[1]

---

[1] *Sandoz, Inc. v. Lannett Company, Inc.* is a case that involves claims for conversion of confidential business information. 2020 WL 7695960 at *5 (E.D. Pa. Dec. 28, 2020). Notably, *Sandoz* relies on the Restatement § 759, which requires that in order to be harmed, the data must be of a "secret or confidential" character. Restatement (First) of Torts § 759 (1939), cmt. b. Because the information here is not confidential, *Sandoz* is inapposite. 2020 WL 7695960 at *5. Likewise, *Jon Feingersh Photography, Inc. v. Pearson Education, Inc.*, a copyright infringement case, is also inapposite, and actually cuts against POM's expansive notion of confidentiality. *See* 281 F.R.D. 234, 237 (E.D. Pa. 2012). In that case, the court held that internal non-public financial data, such as revenue data and sales projections were confidential. *Id.* Critically, the court held that print run quantities and dates of publications—information that had been previously disclosed to the plaintiff and others, like the information at issue in the present case— was not confidential. *Id.*

POM attempts to sidestep the public nature of this information by claiming that it is "impractical" for a third party to "stand next to a POM Game for the entire time that a location is open" to observe cash payout information. Opp. Br. at 23. But whether it is arguably impractical to obtain such information is irrelevant as to whether that information is confidential. Play on the POM Game is conducted publicly, and tickets provided to third-party players openly display and memorialize payout data. This scenario is akin to observing bar patrons engaging in billiards. When these players play billiards, their activities are not confidential. Players of the POM Game have even less confidentiality than such billiard players, as the POM players' ticket vouchers record winnings that the players often present to additional third-parties, such as attendants at gaming establishments, for redemption.

POM further attempts to avoid the reality that the information is non-confidential by suggesting that the information is a "trade secret." Opp. Br. at 22–23. To the extent that POM now argues that the information constitutes a "trade secret," then its claims are preempted under the Pennsylvania Uniform Trade Secret Act, 12 Pa.C.S.§ 5308, which precludes other civil remedies for trade secrets. Similarly, the caselaw POM cites regarding trade secrets is inapposite, as the Complaint does not allege that the information at issue amounts to a "trade secret," a defined term under Pennsylvania law.[2] Moreover, Pennsylvania state cases recognize that when information is "readily ascertainable," it is not protected under trade secret laws.[3]

Indeed, it makes little sense for POM to argue that aggregation of the sort of information at issue is a trade secret since they feature it in an unsealed Complaint. Specifically, the Complaint touts that a skilled player will win, on every play of the POM game, at least 105% of the player's consideration. Compl. ¶ 8. It is misleading for POM to take the position that such information is confidential when POM itself includes the information in its public filings.

---

[2] *See* Opp. Br. at 22 (citing *Jazz Pharms., Inc. v. Synchrony Grp.*, LLC, 343 F.Supp.3d 434 (E.D. Pa. 2018) and *Synthes, Inc. v. Emerge Med., Inc.*, 25 F.Supp.3d 617 (E.D. Pa. 2014)); *see also* 12 Pa.C.S. § 5302 (defining "trade secrets" under Pennsylvania law).

[3] *Robert Half of PA Inc. v. Feight*, 48 Pa. D. & C.4th 129 (Com. Pl. 2000) (information "widely known or readily available" was not a trade secret); *Renee Beauty Salons, Inc. v. Blose-Venable*, 652 A.2d 1345, 1349 (Pa. Super. 1995) (consumer information "easily obtainable through any number of sources" was not a trade secret).

[REDACTED]

## III.    POM Lacks Standing.

POM cannot establish standing to bring its claims through an injury-in-fact, and the Complaint should be dismissed on this basis alone. *Spokeo*, 578 U.S. at 338. "Only those



plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

With respect to Count I, which alleges violations of the CFAA, POM's Complaint identifies three types of harm, namely "harm to POM's data, loss of sales of POM-approved [Ticket Redemption Terminals], and costs of investigation and remediation." [6] Compl. ¶ 47. In its Opposition, POM attempts to expand this list by stating that the Sentry "impair[s] the integrity of the POM Game." Opp. Br. at 6. POM cannot use its briefing to re-write its Complaint. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted). Moreover, POM cannot rely on unspecified harms to establish an injury-in-fact. The injury must be "concrete and particularized" and "actual or imminent," not hypothetical. *Spokeo,* 578 U.S. at 340.

POM's remaining claims are likewise deficient as to standing. Regarding Count II, POM contends that because it has alleged that Pyramid, via Sentry, accessed and collected "confidential business information" without authorization, POM therefore has standing. Opp. Br. at 8. In support, POM cites a string of cases noting that Pennsylvania recognizes torts for misuse of trade secrets and confidential information. *Id*. As explained above, not only are trade secret cases irrelevant to the current dispute, the fact that Pennsylvania recognizes such causes of action is also not in dispute. What is at issue is whether POM has standing to bring its claims. Simply asserting that confidential information is being misappropriated is insufficient by itself to establish a concrete injury, as required for Article III standing; instead, POM must demonstrate how it was purportedly damaged. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press") (quotation omitted).

---

[6] POM also argues that Pyramid's standing challenge is a facial attack, rather than a factual challenge. Opp. Br. at 4. While Pyramid contests this distinction, POM's standing fails under either standard. Pyramid is bringing a factual challenge by attacking the allegations of purported facts underlying POM's assertion of jurisdiction. Regardless of whether this is a facial or factual challenge, POM lacks standing to bring its claims.

POM's efforts to salvage standing under the Spyware Act are similarly baseless. In its Complaint, POM alleges that because "POM is the distributor of the POM Game, it is entitled to seek relief under the Spyware Act against Pyramid" for damages up to $100,000 per violation. Compl. ¶¶ 68–69. In the Opposition, POM now claims that the accessing of purportedly confidential information grants it standing under the Spyware Act. Opp. Br. at 8–9 n. 5. But, this must be disregarded as POM has not actually alleged how it was adversely affected by activity actionable under the Spyware Act in the Complaint itself, nor does POM point to any "concrete injury" suffered as a result of a purported statutory violation. *See* Mem. at 12..

POM also grasps at a medley of inapposite decisions to help support its standing arguments, but these decisions are distinguishable from the present case both legally and factually. Opp. Br. at 9–11 (citing cases). None of the decisions involve the CFAA, Spyware Act, or common law claims of misappropriation or misuse of confidential business information. Furthermore, the claims in the decisions involved unique circumstances where inarguable theft and concrete, active use of data to cause harm was alleged.[7] Thus, the cases are irrelevant here, and do not change the fact that POM lacks standing to bring its claims.

## IV.    POM Fails to Plausibly State a Claim Under Any Count.

### A.    POM's Spyware Claim Is Not Viable.

POM fails to assert a plausible violation of Pennsylvania's Spyware Act. POM claims Pyramid violated the Spyware Act's provisions at 73 Pa.C.S. § 2330.3 . Compl. ¶ 61.[8] Under

---

[7] *See Transunion*, 594 U.S. at 417 (involving confidential consumer credit reports, where in the present case members of the public necessarily had access to the allegedly confidential information at issue, specifically, publicly available tickets that are not confidential in the first instance); *Clemens v. ExecuPharm Inc*., 48 F.4th 146, 154–56, 159 (3d Cir. 2022) (involving a putative class action alleging the theft and misuse of information following a data breach); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (involving a putative class action based on supposed lack of authorization to track internet browser activity); *Susinno v. Work Out World, Inc.*, 862 F.3d 346, 350–52 (3d Cir. 2017) (involving a claim brought under the Telephone Consumer Protection Act relating to receipt of unsolicited communications).

[8] POM also alleges that POM violated the Spyware Act via interaction with antispyware or antiprivacy software. Compl. ¶ 61(a). In its Opposition Brief, POM now argues that any argument about antispyware or antiprivacy software is a "misconception" and appears to concede that this allegation has no relevance to this matter. Opp. Br. at 20.

Section 2330.3, an alleged violator must (i) cause computer software to be copied or procure that copying onto a computer in Pennsylvania and (ii) then perform one or more acts deemed to be deceptive.

As an initial matter, this case does not involve computer software. In its Opposition, POM attempts to rectify this fatal omission by asserting that the purportedly confidential data is actually "computer software" under the Spyware Act. Opp. Br. at 19-20. The Spyware Act directly forecloses such an argument, as it defines "computer software" to exclude "a text or data file," unlike the information at issue in this case. Pa.C.S. § 2330.2. Moreover, POM has not made any allegation under the Act's first prong, requiring copying of software. Because this required element is lacking, the claim also must be dismissed.

**B.      POM's Claim for Misappropriation of Confidential Information Fails.**

For the reasons described above, *supra* § I, POM fails to state a claim for misuse of confidential business information. The information at issue is not confidential.

**C.      POM's CFAA Claim Is Not Plausible.**

**1.      The POM Game is Not a "Protected Computer"**

POM's CFAA theories rely on the POM game being a "protected computer." *See* Compl. ¶ 44; *see also* 18 U.S.C. § 1030(a)(2) (requiring information be obtained from a "protected computer"); § 1030(a)(4) (requiring accessing a "protected computer"). Under the CFAA, a "protected computer" means, in relevant part, a "computer" "which is used in or affecting interstate or foreign commerce or communication." § 1030(e)(2)(B).[9] But, POM has failed to establish that the POM Game satisfies this requirement.

POM argues that the POM Game is a "protected computer" because it contains components from multiple states, was manufactured in multiple states, generates profits that go to multiple states, and the POM Game or its components traveled through channels of interstate

---

[9] A "computer" is a separate defined term under the CFAA, meaning "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *Id*. § 1030(e)(1).

transportation to Pennsylvania. Compl. ¶ 44. POM does not cite any authority in support of its expansive reading of the CFAA's "protected computer" definition. Opp. Br. at 11–12.

In general, all "computers" are made of multiple components that may cross state lines. Thus, POM's over-expansive definition threatens to render the CFAA's distinction between the defined terms "protected computer" and "computer" as mere surplusage, in violation of the statutory canon against surplusage.[10] Consistent with this fact, the vast majority of courts to have considered this issue have widely identified whether a computer is "protected" under the CFAA through internet connectivity.[11]

---

[10] *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law") (quotation omitted).

[11] *See, e.g., United States v. Drew*, 259 F.R.D. 449, 457 (C.D. Cal. 2009) (Protected computer element "will always be met when an individual using a computer contacts or communicates with an Internet website."); *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 2010 WL 2854247, at *4 n.2 (E.D. Wash. July 19, 2010) (stating that "any computer connected to the internet is a protected computer"); *New Touch Digital Inc. v. Cabral* 2020 WL 5946067, at *2 (D.D.C. Oct. 7, 2020) ("Courts have agreed that effectively all computers with Internet access constitute protected computers") (internal quotations omitted); *United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (noting that "protected computer" means "effectively all computers with Internet access"); *Freedom Banc Mortg. Servs., Inc. v. O'Harra*, 2012 WL 3862209, at *6 (S.D.Ohio Sept. 5, 2012) (holding that "[a] computer that is connected to the internet ... satisfies § 1030(e)(2)'s interstate commerce requirement even if the plaintiff used that connection to engage in only intrastate communications"); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (upholding the constitutionality of the CFAA as applied to a defendant who admitted that the relevant computers were connected to the internet); *Cont'l Grp., Inc. v. KW Prop. Mgmt., LLC*, 622 F.Supp.2d 1357, 1370 (S.D. Fla. 2009), *order clarified*, 2009 WL 3644475 (S.D. Fla. Oct. 30, 2009) (stating that "the greater weight of authority favors" the view that a protected computer is any computer with an internet connection); *Dedalus Found. v. Banach*, 2009 WL 3398595, at *2 (S.D.N.Y. Oct. 16, 2009) (noting that "[c]ourts have also found that computers that access the Internet through programs such as email qualify as protected computers"); *Grisafi v. Sony Elecs. Inc.*, 2019 WL 1930756, at *7 (D.N.J. Apr. 30, 2019) (concluding that a computer connected to, and used to access, the Internet is a "protected computer" under the CFAA); *United States v. Yücel*, 97 F. Supp. 3d 413, 418–419 (S.D. N.Y. 2015) (same); *Gap Properties, LLC v. Cairo*, 2021 WL 5757410, at *3 (D.N.J. Dec. 3, 2021 (same); *Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 863 (S.D. Tex. 2015 (same); *Merritt Hawkins & Assocs., LLC v. Gresham*, 948 F. Supp. 2d 671, 674 (N.D. Tex. 2013) (same); *Becker v. Toca*, 2008 WL 4443050, *5 (E.D. La. 2008) (same); *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887, 891–892 (N.D.Cal. July 20, 2010) (same); *United States v. Fowler*, 2010 WL 4269618, at *2 (M.D. Fla. Oct. 25, 2010), *aff'd*, 445 F. App'x 298 (11th Cir. 2011) (same); *Paradigm All., Inc. v. Celeritas Techns., LLC*, 248 F.R.D. 598, 602 (D. Kan. 2008); (same); *Expert Janitorial, LLC v. Williams*, 2010 WL 908740, at *8 (E.D.Tenn. Mar. 12, 2010) (use of email indicated internet connectivity leading to conclusion that computer was "protected").

To be sure, a few courts have, respectively, determined that a computer was "used in interstate commerce," and thus a "protected computer," when the complaint alleged that the computer interfered with the federally regulated radio spectrum; was connected to a company network; or was used to engage in global financial markets, or sell products across state lines.[12] But POM cannot avail itself of such a determination here, as the Complaint does not allege that the POM Game was used in any of these ways.

### 2. There was No "Access."

POM's CFAA theories require "access" to a protected computer. §§ 1030(a)(2); 1030(a)(4). Because there was no "access," POM's CFAA claims fail.

POM's primary argument regarding access is that Pyramid asserts facts outside the Complaint, specifically that the Sentry "pairs" with the Printer installed in the POM Game. Opp. Br. at 13. These facts, however, are actually part of the Complaint. The Complaint includes numerous allegations regarding information printed on payout tickets through an internal Pyramid printer, and how Sentry is "paired" with the POM printer. See Compl. ¶¶ 15, 26, 28, and 32. Because the Complaint raises these issues, Pyramid may properly discuss them in the Motion to Dismiss.[13] In response to these facts, POM has failed to assert that any of this activity amounts to "access" under the CFAA beyond a self-serving conclusion that its allegations are "sufficient." Opp. Br. at 13.

Rather, POM merely claims in conclusory fashion that it has properly pleaded that Sentry "accessed the POM Game, its internal printer and its confidential data." *Id*. at 13. This is

---

[12] *See U.S. v. Mitra*, 405 F.3d 492 (7th Cir. 2005)*; Pine Env't Servs., LLC v. Carson,* 43 F. Supp. 3d 71, 76 (D. Mass. 2014); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 775–76 (S.D. Tex. 2010); *Nordstrom Consulting, Inc. v. M & S Tech., Inc.*, 2008 WL 623660, at *12 (N.D. Ill. March 4, 2008); *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 318–19 (D. Conn. 2008); and *Schlumberger Tech. Corp. v. McReynolds*, 2016 WL 4597627, at *3 (W.D. La. Sept. 1, 2016).

[13] *See Hiscox Ins. Co., Inc. v. MRB Lawn Servs.*, 2023 WL 6050221, at *4 (E.D. Pa. Sept. 15, 2023) ("In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint"); *Houser v. Feldman*, 600 F. Supp. 3d 550, 563 (E.D. Pa. 2022) (quotation omitted) (noting that the "face of the complaint" means "the allegations contained in the complaint, matters of public record, materials embraced by the complaint, and materials attached to the complaint.").

insufficient. POM's legal conclusions are not entitled to deference on a Rule 12 motion, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### 3. Even if There Was "Access," It Was Authorized.

To the extent the Court agrees with POM that Pyramid "accessed" information here, the access was authorized, defeating POM's CFAA theories.

POM fails to allege that it alone controls authorization to access the POM Game. Instead, the Complaint states that POM is merely the distributor of the POM Game. Opp. Br. at 14 (citing Compl. ¶ 7). POM claims that it did not authorize Pyramid to access data from the POM Game. Compl. ¶ 38. But, the Complaint does not allege that POM had the ability, as the game's distributor, let alone the sole authority, to authorize access to the POM game. In fact, POM fails to allege who actually owns the POM Game or individual game units. Moreover, the printed tickets are not a part of the POM Games: They are an output of the machine, not a component—and they are not confidential.  Compl. ¶ 12 (noting POM Game prints a ticket the player may redeem for cash). As described above, Sentry scans publicly-available tickets. POM does not control access to these tickets. Players obtain the tickets and present them to attendants or gaming locations' Ticket Redemption Terminals to obtain cash prizes. Compl. ¶¶ 14–17. To the extent that authority is needed for Sentry to scan tickets, players or the locations' representatives necessarily provide such authorization.

### CONCLUSION

For the reasons set forth in Pyramid's Motion to dismiss, POM's Complaint should be dismissed. Because amendment of the claims would be futile, dismissal should be with prejudice. *United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, 2022 WL 264554, at *4 (3d Cir. Jan. 28, 2022).

Dated:  January 30, 2024

**DILWORTH PAXSON LLP**


Timothy J. Ford, Attorney ID: 325290
tford@dilworthlaw.com
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: +1.215.575.7017
Facsimile: +1.215.575.7200

**PERKINS COIE LLP**


By:  _/s/ Barak Cohen_
Barak Cohen, Admitted _pro hac vice_
BCohen@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile:  +1.202.654.6211

_/s/ Thomas J. Tobin_
Thomas J. Tobin, Admitted _pro hac vice_
TTobin@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

-11-

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that a true and correct copy of the foregoing was served upon the following via Electronic Filing System (CM/ECF) on the date specified below:

*Via CM/ECF:*

Matthew H. Haverstick
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
215-568-2000
Fax: 215-568-0140
Email: mhaverstick@kleinbard.com

Date: January 30, 2024

/s/*Barak Cohen*
Barak Cohen

-12-